## Walter A. Wood Mowing & R. M. Co. v. John J. Trexler.

1. APPELLATE COURT PRACTICE—*Objections Made to the Admission of Evidence to be Shown by the Abstract.*—Objections made to the admission of improper evidence must be preserved in the record and shown by the abstract.

2. CONTRACTS—*Rule of Construction.*—Parties have a right to make their agreements in such language as they may choose to use, and it is the duty of the courts in construing them, even though claimed to be undertakings to answer for the defaults of others, to give effect, if possible, to every word used in them.

Assumpsit, on a contract of guaranty. Appeal from the Circuit Court of Jasper County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the August term, 1901. Reversed and remanded. Opinion filed October 21, 1901.

Statement.—November 28, 1891, appellant and appellee entered into a contract in writing by which appellant agreed to furnish certain of its harvesting machines to appellee, to be sold in a certain district, as agent and trustee of appellant, on commission, the commissions on the sales to be the difference between the prices at which the machines were to be furnished and the retail prices at which they were sold, after deducting discounts, expenses and demands of all kinds growing out of the sale of the machines.

The contract is lengthy, consisting of seventeen special clauses, the most of which are unnecessary to be noticed, but the particular clauses involved in this case are as follows:

" Ninth. Party of the second part agrees to make sales only to parties of well-known responsibility and good repu-

tation for payment of their debts, and to require that at least one of the makers of each note shall certify, in property statement on said note, to his owning an improved farm, not subject to incumbrance, liens and exemptions exceeding in amount one-third of the actual value of such farm, and worth at least $1,500 over and above all incumbrances, liens and exemptions.

Tenth. Party of the second part agrees to guarantee the payment of all notes andrenewals of notes taken under this agreement (not having property statement properly filled out as required in clause nine of this agreement), and further agrees to indorse all such notes and renewals of notes in the following form, to wit:

'For value received, I (or we) hereby guarantee the payment of the within note. Demand for payment, protest and notice of protest waived.'

But failure by said second party to indorse said notes shall not affect the above guarantee of payment."

On June 16, 1892, appellee sold a reaping machine to one F. E. Muerlott, and took therefor two notes of that date, for $45 each, payable to the order of appellant, on or before September 29, 1893, and September 29, 1894, respectively, with interest at seven per cent per annum. The notes were signed by F. E. Muerlott and Sam Muerlott. On the back of each note (the blanks of which had been furnished by appellee) there were printed blanks as follows:

" For value received, —— hereby guarantee the payment of the within note. Demand for payment, notice of protest and protest waived.
(See contract.)
For the purpose of obtaining the within credit."

" I hereby certify that I own —— acres of land in my own name in the ——, Section ——, Township ——, Range ——, in the County of ——, State of ——, which is worth, at fair valuation, $——; all encumbrances do not exceed $——, and the title is perfect in me in all respects. I have stock and personal property to the amount of $1,500, and my debts do not exceed $——. There are no judgments against me."

Neither the blank guaranty, nor the property blank on either of the notes was filled out or signed.

Appellant brought suit against appellee on the contract,

to recover the amount of the notes, before a justice of the peace of Jasper.county, and had judgment therefor, from which appellee appealed to the Circuit Court of the county, where the case was tried by a jury, and at the close of the evidence, the jury, under an instruction of the court, to which appellant excepted, found for the defendant, and after overruling plaintiff's motion for a new trial, judgment was rendered on the verdict.

I. D. SHAMHART, attorney for appellant.

GIBSON & JOHNSON, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Twelve errors are assigned on the record, the most of which are unnecessary in order to raise the questions involved in the case, and hence need not be specially noticed.

It is urged that the court erred in admitting improper evidence to go to the jury on behalf of appellee, but if so, all that need be said about it is that no objection was made to it, nor was any exception taken to the ruling of the court in admitting it; at least none appears in the abstract.

The principal question raised and argued by counsel is whether appellee is bound by his contract to pay the notes. We do not understand counsel for appellee as contending that if appellee had guaranteed the payment of the notes, on the notes themselves, he would not be liable to pay them, nor could he well maintain such a contention, in view of the well settled rule of law of this State on the subject of absolute guaranties of payment of commercial paper. But it is said by counsel for appellee that "agreeing to do an act, and actually doing the act, are distinctly separate matters." This is true, as is demonstrated by the case under consideration. An agreement to do a thing is an obligation to do it, generally expressed in words, while the doing of it is the ultimate thing sought by the agreement and fulfills the obligation.

It is also said by counsel: "The liability of a guarantor is ascertained by strict construction of his undertaking, be-

yond which he is in no way bound." This statement is quite correct; but another rule of law must not be lost sight of in construing agreements, even when claimed to be undertakings to answer for defaults of others, and that is, that parties have a right to make agreements in such language as they may choose to use, and it is the duty of courts construing an agreement, to give force and effect, if possible, to every word used in it.   Beech on Modern Law of Contracts, Vol. 1, Sec. 711; Bowman v. Long, 89 Ill. 19; C. B. & Q. R. R. Co. v. Bartlett, 120 Ill. 603.

Appellee knew when he entered into the agreement to sell appellant's machines, that appellant's location and place of business was nearly, or quite, a thousand miles distant from the place where the machines were to be sold, and that its general agents could not be expected to have knowledge of the financial conditions of those who would become purchasers of machines; that it was important for appellant to know from the purchasers themselves that they were able to pay for the machines; hence, the plan adopted to get the information, was to require the agent selling the machines on a commission, to require of the purchasers of machines on credit, to furnish information as to their property qualifications, that appellant might know that its machines were being sold to persons to whom it was safe to extend credit. The requirement was reasonable and appellee agreed to comply with it, and if he did not, to assume the burden of the debt himself.   It is not pretended that appellee complied with his agreement, or made any effort to do so so, but chose to take the consequences of non-compliance; and these consequences, according to the plain terms of the agreement, were, that he would pay the notes himself if the makers did not pay them when due, and he took upon himself the responsibility of ascertaining that the makers had not paid them.   To say, as appellee's counsel seems to contend, that by appellee's failure to guarantee the payment of the notes on the back of them, that he was not bound to pay them, because he had not put his guaranty upon them, is in effect saying that he had reserved the power, or at

least the privilege, of nullifying his own agreement by doing nothing at all. A construction of the agreement that leads to such a result can not be tolerated. Besides, appellee said in his agreement, " but failure by said second party to indorse said notes shall not affect the above guaranty of payment." When once appellee became bound to pay the notes, by his agreement and his failure to secure the property certificates, appellant might safely rely on appellee's guaranty to pay them, and appellant was not guilty of any laches in failing to proceed against the makers of the notes in an endeavor to collect of them. The authorities in support of this proposition are believed to be uniform, and it would seem a vain display of learning to cite them. When the makers failed to pay the notes as they matured, appellee should have paid them, and looked to the makers to reimburse him, at a time when he claims the money could have been realized; and because he did not do so and the makers have since become insolvent, or left the country, as is said by appellee to be the case, appellee is the party guilty of laches, and must suffer the consequences, unless appellant has done some affirmative act that discharges him from performing his contract.

There is some evidence that appellant extended the time of payment of one of the notes, but there is no evidence of any consideration for the agreement to extend it, if any there was.

Whether, if there was a valid extension of the note, it could be said that it was a " renewal" of it, so as to bring it within the tenth clause of the agreement, we express no opinion, as the point has not been raised by counsel.

It follows from what has been said that the court erred in instructing the jury to find for the defendant, and for this error the judgment is reversed and the cause remanded.