SECOND DIVISION
FILED: December 26, 2007

No. 1-06-3363

| | |
|---|---|
| IMC GLOBAL, n/k/a MOSAIC GLOBAL HOLDINGS, INC., | ) APPEAL FROM THE<br>) CIRCUIT COURT OF<br>) COOK COUNTY |
|     Plaintiff/Counter-Defendant/<br>    Appellant, | )<br>) |
| v. | )<br>) |
| CONTINENTAL INSURANCE COMPANY, | )<br>) |
|     Defendant/Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, n/k/a EMPLOYERS INSURANCE COMPANY OF WAUSAU, | ) 02 CH 10271<br>)<br>)<br>) |
|     Third-Party Defendant/Counter-<br>    Plaintiff/Appellee, | )<br>) |
| and | )<br>) |
| HARTFORD ACCIDENT & INDEMNITY COMPANY, HOME INDEMNITY COMPANY, INTERNATIONAL INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, MARYLAND CASUALTY COMPANY, NATIONAL UNION INSURANCE COMPANY OF PITTSBURGH, PA., | )<br>)<br>)<br>)<br>)<br>)<br>) THE HONORABLE |
|     Third-Party Defendants. | ) PETER FLYNN,<br>) JUDGE PRESIDING. |

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Mosaic Global Holdings, Inc. (Mosaic), appeals from a declaratory judgment entered in favor of Employers Insurance Company of Wausau (Wausau), finding that Wausau had no duty to defend or indemnify Mosaic in underlying federal actions involving claims for personal injury and property damage resulting from exposure to hazardous chemicals at a fertilizer plant formerly

operated by Mosaic's predecessor-in-interest. For the reasons which follow, we affirm.

The essential facts giving rise to this appeal are not in dispute. Mosaic's predecessor-in-interest, International Minerals & Chemical Corporation, operated a fertilizer production plant in Spartanburg, South Carolina from 1910 until 1986. In the late 1960s, Wausau's predecessor-in-interest, Employers Mutual Insurance Company of Wisconsin, issued two comprehensive general liability policies to International Minerals & Chemical Corporation. The first policy provided coverage from December 1967 until December 1968 (hereinafter the "1967 Policy"), while the second policy provided coverage from December 1968 through December 1969 (hereinafter the "1968 Policy").

As originally written, both policies contained the following notice provision:

> "9. Notice to Company. Written notice of occurrences which may be the basis of claim shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available

1-06-3363

witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

After the policies were issued, the parties amended the notice provisions. With regard to the 1967 Policy, the relevant amendatory endorsement reads as follows:

"It is hereby understood and agreed that condition number 9 of this policy, to which this endorsement is made to form a part, is amended to read as follows:

When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable after the accident is known to the insurance division of the insured's office, Skokie. Such notice shall contain particulars sufficient to identify the insured and also reasonable [sic.] obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

The amendatory endorsement to the 1968 Policy provides:

> "It is hereby understood and agreed that
> condition number 9 of this policy, to which
> this endorsement is made to form a part, is
> amended to read as follows:

When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable after the accident is known to the insurance division of the insured's office, Skokie. Such notice shall contain particulars sufficient to identify the insured and also reasonable [sic.] obtainable information respecting the time, place and circumstances of the accident, the named [sic.] and addresses of the injured and of available witnesses. If a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

On April 17, 1999, representatives from Mosaic met with residents of the Spartanburg community to discuss issues regarding the former fertilizer plant. At the meeting, Grover Hankins, a law professor at Texas Southern University, demanded that Mosaic pay $25 million to relocate the community and $150 million as compensation to the community for past "injustices." Mosaic did not notify Wausau of Professor Hankins' $175 million demand.

In a letter dated May 13, 1999, Russell Heald informed Mosaic

that Professor Hankins and the law firm of Hilliard & Heald represented most of the residents who lived around the abandoned fertilizer plant in Spartanburg. Attached to the letter was a list of approximately 650 residents of the community purportedly represented by Professor Hankins and Hillard & Heald. During a phone conversation on February 9, 2000, Bob Hilliard of Hilliard & Heald informed Mosaic's outside counsel that his clients intended to file suit against Mosaic within the next 60 to 90 days. Nothing in the record indicates that Mosaic provided Wausau with notice of either the May 13, 1999, letter or the February 9, 2000, phone conversation.

On August 31, 2000, approximately 1,200 current and former residents of Spartanburg brought suit against Mosaic in the United States District Court for the District of South Carolina, alleging personal injury and property damage resulting from exposure to hazardous chemicals released during Mosaic's operation of the fertilizer plant. On October 2, 2000, Mosaic hired the law firm of Hunton & Williams to defend it in the federal lawsuit.

At the bench trial held in the instant declaratory judgment action, Richard Cox, the director of risk management at Mosaic, testified that he was responsible for notifying insurance carriers of claims against Mosaic when the federal lawsuit was filed. In November of 2000, Cox received a copy of the August 31, 2000, lawsuit. Mosaic's legal department supplied him with a "stack of

papers" containing the letters that Mosaic had previously sent to approximately 70 primary and excess liability insurers in 1996 to notify them of "an occurrence resulting in response costs to remedy unexpected contamination by hazardous substances" at the Spartanburg plant. On November 20, 2000, Cox sent notice of the August 31, 2000, lawsuit to various insurers using the addresses on the 1996 notification letters.

Included among the documents Cox received from the legal department was a 1996 letter referencing the two polices at issue in this case. The letter, however, was addressed to "Employers Mutual" in Des Monies, Iowa, rather than to Wausau. Accordingly, Cox did not provide Wausau with notice of the federal lawsuit on November 20, 2000, but mistakenly sent a notice letter concerning the two polices to Employers Mutual Casual Company in Des Moines, Iowa. On July 10, 2001, Cox sent a second letter to Employers Mutual in Des Moines, Iowa regarding the two polices.

The materials that Cox received also contained notice letters sent to Wausau in 1996 concerning excess coverage policies issued by Wausau. Cox, however, admitted that he missed those documents when he prepared the November 20, 2000, notification letters.

On January 9, 2001, the individual parties and claims in the August 31, 2000, federal lawsuit were severed. On April 5, 2001, 907 of the 1,200 original plaintiffs filed separate, albeit similar, lawsuits in the federal district court.

On October 12, 2001, the law firm of Foley & Lardner, which Mosaic had retained as its insurance counsel, served Wausau with copies of the 907 complaints in the underlying federal actions and tendered the defense of the litigation to Wausau. By a letter dated January 7, 2002, Wausau denied coverage for those lawsuits where the claimants (1) alleged injury as a result of their exposure during their employment at the fertilizer plant or (2) alleged they were not exposed to the contaminants until after the polices had expired. In that same letter, Wausau agreed to defend Mosaic in the remainder of the lawsuits under a reservation of rights.

In a letter to Wausau dated January 11, 2002, Foley & Lardner noted that Mosaic's legal fees and expenses in defending the underlying suits exceeded $2 million and requested that Wausau "begin paying its share of these defense costs." The letter further stated that, "[w]hile we believe that each insurer with a duty to defend is responsible for these fees, in the interest of moving forward, we would like to hear from you to arrange initial payments of an appropriate share." By a letter dated January 21, 2002, Wausau reiterated its coverage position and noted that pre-tender defense costs would not be paid.

In May of 2002, attorneys at Foley & Lardner met with Harold Moore, the Wausau employee assigned to Mosaic's insurance claims. On Wausau's behalf, Moore offered to pay 4% of the reasonable

defense costs. Moore testified that, at the meeting, one of Foley & Lardner's attorneys informed him that there were no pre-tender defense costs because Mosaic had provided notice to Wausau prior to October 12, 2001.

In July of 2002, after an agreement as to Wausau's "appropriate" share of the defense costs could not be reached, Wausau agreed to pay, under a reservation of rights, 100% of Mosaic's reasonable defense costs incurred after Wausau was tendered the defense of the underlying federal actions. On July 22, 2002, Mosaic provided Wausau with the billing invoices paid to date in defense of the underlying actions.

By letters dated July 15, 2002, and August 13, 2002, Mosaic reminded Wausau of its agreement to pay 100% of the defense costs and further stated that Wausau had first received notice on November 20, 2000. Attached to the August 13, 2002, letter were copies of the November 20, 2000, and July 21, 2001, letters Cox sent to Employers Mutual in Des Moines, Iowa concerning the two polices at issue in this case.

In an e-mail sent on August 21, 2002, Moore informed Mosaic that it appeared that the November 2000 and July 2001 notification letters were sent to Employers Mutual of Iowa, not Wausau. Moore further stated that he had initiated an investigation into whether an affiliation between the two companies existed.

According to his testimony, Moore conducted a line-by-line

review of the billing invoices submitted on July 22, 2002. After he reviewed two months of invoices, Wausau paid $223,101.79 to Mosaic on August 30, 2002, as reimbursement for the two months of defense costs.

Sometime in late August or early September of 2002, Moore was informed that there was no relationship between Employers Mutual of Iowa and Wausau. In a letter authored by Moore and dated September 9, 2002, Wausau denied coverage based upon Mosaic's failure to provide timely notice of the underlying federal actions.

On September 13, 2002, Wausau filed a counterclaim against Mosaic in the instant action brought by another insurance company. In its counterclaim, Wausau sought, inter alia, a declaration that it had no obligation to defend or indemnify Mosaic in the underlying actions.

On October 4, 2005, Mosaic filed a motion for partial summary judgment, arguing, inter alia, that summary judgment should be granted on Wausau's late notice of suit defense with respect to the 1967 Policy because the amendment to the policy had eliminated the notice of lawsuit requirement in the policy. The circuit court agreed and granted Mosaic's motion.

On November 1, 2005, Mosaic filed another motion for summary judgment, arguing, inter alia, that Wausau was estopped from asserting policy defense because it failed to either defend Mosaic in the underlying actions or timely seek a declaratory judgment on

1-06-3363

its duty to defend.  The circuit court denied this motion.

Mosaic and Wausau then proceeded to a bench trial on Wausau's late notice of lawsuit defense under the 1968 Policy.  Near the end of the trial, Wausau moved for reconsideration of the circuit court's decision with regard to the notice of lawsuit provision in the 1967 Policy.  Shortly before closing arguments were held, the court granted Wausau's motion to reconsider and vacated the partial summary judgment.  Although the circuit court reaffirmed its earlier ruling that the amendment unambiguously removed the notice of lawsuit requirement from the 1967 Policy, the court concluded that the removal of the notice requirement was clearly a mistake.  In making this ruling, the circuit court stated:

> "What does one do in a situation of that sort?  In my view, notwithstanding the objective theory of contract, it would be absolutely ridiculous to hold parties to a result that neither of them demonstrably intended based on an unfortunate wording.  The cause of action for reformation is one method of addressing situations of that kind.  But I prefer to get at it more simply than that.
>
> Calamari, C-a-l-a-m-a-r-i, and Perillo, P-e-r-i-l-l-o, on contracts, third edition, section 9-27 at page 387 addresses situations

of unilateral mistake. The beginning of that section reads as follows: 'Until recently the common generalization has been that avoidance is not available for unilateral mistake except where the other party knows or has reason to know the mistake.' I pause to observe that this is a situation in which based on the testimony of Mr. Cox, I find that [Mosaic] knew or had reason to know of the mistake in framing the endorsement as is demonstrated by the fact that [Mosaic's] own personnel apparently did not read the endorsement as meaning what [Mosaic's] alert counsel have subsequently pointed out that in fact it says.

Calamari and Perillo go on in the same section on page 387 to say if the mistake - I quote, 'If the mistake is large enough that it should be obvious, then the mistake is classified as palpable and relief is easily given.' In this case the mistake in the endorsement was to eliminate from a primary liability policy an element of a primary liability policy, which nobody has even testified to the point, has ever seen missing

from such a policy before and one the elimination of which makes a hash of the policy. In my view, that qualifies as a palpable error on any standard. Timely notice of suit is indeed, as Mr. Cox testified, basic to a liability policy.

***

I conclude that the granting of partial summary judgment on that point was erroneous, and Wausau's motion to reconsider on that point is granted. I will, therefore, for purposes of future proceedings assume that policy number one means the same thing with regard to notice of suit, notice of claim or suit, as policy number two."

At the conclusion of the bench trial, the circuit court entered an order on February 22, 2006, finding that, under both the 1967 Policy and the 1968 Policy, Mosaic was required to provide Wausau with timely notice of a claim or suit. The court, however, determined that Mosaic's delay in providing notice (1) was inadvertent, (2) was not inexcusable under the circumstances, and (3) did not prejudice Wausau; and, therefore, the delay did not relieve Wausau from its obligations under the policy. The court further found that Mosaic breached its duty of cooperation by

delaying the transmission of the defense billing invoices in the underlying federal actions to Wausau and reduced Wausau's responsibility for those bills by 10%. Finally, the court concluded that Wausau was liable to Mosaic under both policies in an amount to be determined in the future.

Thereafter, Wausau filed a motion to reconsider that portion of the circuit court's February 22, 2006, order that rejected its late-notice defense. Mosaic also filed a motion to reconsider the pre-trial order rejecting its estoppel defense.

On October 13, 2006, the circuit court denied Mosaic's motion for reconsideration and reaffirmed its conclusion that Wausau was not estopped from denying coverage. On that same date, the court granted Wausau's motion for reconsideration and concluded that Mosaic's notice to Wausau was unreasonably and inexcusably late. As a consequence, the circuit court found that Wausau owed no coverage to Mosaic under the policies. The October 13, 2006, order also contained the requisite findings under Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal. This appeal followed.

When, as in this case, a challenge is made to a ruling following a bench trial, the circuit court's judgment will not be disturbed on appeal unless it is against the manifest weight of the evidence. <u>Brody v. Finch University of Health Science/The Chicago Medical School</u>, 298 Ill. App. 3d 146, 153, 698 N.E.2d 257 (1998).

A judgment is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or where the factual findings upon which it is based are unreasonable, arbitrary, or not based on the evidence. Brody, 298 Ill. App. 3d at 153.

On appeal, Mosaic argues that the circuit court erred when it concluded that the absence of the notice of claim or suit requirement in the 1967 Policy was a mistake and sua sponte reformed the policy to include such a provision. We agree.

Contrary to the circuit court's assertions that it was not reforming the policy, it cited to a section of a treatise discussing rescission, (see J. Calamari & J. Perillo, Contracts, §9-27, at 386-88 (3rd ed. 1987)), and then appeared to have reformed the 1967 Policy by including a notice of claim or suit requirement in the policy. See Schaffner v. 514 W. Grant Place Condominium Ass'n, 324 Ill. App. 3d 1033, 1044, 756 N.E.2d 854 (2001) (reformation allows a contract to be amended to reflect the true agreement between the parties). Wausua, however, never sought reformation in its complaint, nor did it seek to amend its pleadings to conform with the proofs on this issue.

The issues in controversy and the theories upon which recovery is sought are fixed in the complaint. Kincaid v. Ames Department Stores, 283 Ill. App. 3d 555, 568, 670 N.E.2d 1103 (1996). Accordingly, the circuit court lacks jurisdiction to adjudicate an

1-06-3363

issue not presented through proper pleadings. <u>William J. Templeman Co. v. Liberty Mutual Insurance Co.</u>, 316 Ill. App. 3d 379, 388, 735 N.E.2d 669 (2000). Because Wausau never raised the issue of reformation in its complaint or sought to conform its pleadings to the proofs asserting reformation, we disagree with the basis upon which the circuit court concluded that the 1967 Policy required Mosaic to provide Wausau with notice of a claim or suit. However, as this court may affirm the judgment of the circuit court on any basis in the record (<u>Liberty Mutual Insurance Co. v. American Home Assurance Co.</u>, 368 Ill. App. 3d 948, 955, 858 N.E.2d 530 (2006)), our analysis continues.

Wausau argues that the circuit court misconstrued the amendatory endorsement to the 1967 Policy. It contends that the endorsement only modified the occurrence notice portion of the 1967 Policy and did not affect the requirement that notice be given to the insurer if a claim or suit is brought against the insured. Wausau further contends that the absence of a notice of claim or suit provision would be absurd, as a key component of the policy would be eliminated. Mosaic disagrees, maintaining that, because the sentence requiring notice of a claim or suit is not included in the endorsement, this condition was eliminated from the 1967 Policy.

When construing the language of an insurance policy, our primary function is to give effect to the intention of the parties

as expressed by the words of the policy. <u>Central Illinois Light Co. v. Home Insurance Co.</u>, 213 Ill. 2d 141, 153, 821 N.E.2d 206 (2004). An insurance policy is construed as a whole, giving effect to every provision. <u>Central Illinois Light Co.</u>, 213 Ill. 2d at 153. Where the language of the policy is clear and unambiguous, it must be given its plain, ordinary, and popular meaning. <u>Rich v. Principal Life Insurance Co.</u>, 226 Ill. 2d 359, 371, 875 N.E.2d 1082 (2007). If the words used in the policy are susceptible to more than one reasonable interpretation, the ambiguity must be resolved in favor of coverage. <u>Rich</u>, 226 Ill. 2d at 371.

As originally written, condition number 9 of the 1967 Policy required that:

> "Written notice of occurrences which may be the basis of claim shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses. If claim is made or suit is brought against the insured, the insured shall immediately forward

1-06-3363

> to the company every demand, notice, summons or other process received by him or his representative."

The parties then entered into an amendatory endorsement, which provided:

> "It is hereby understood and agreed that condition number 9 of this policy, to which this endorsement is made to form a part, is amended to read as follows:
>
> When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable after the accident is known to the insurance division of the insured's office, Skokie.  Such notice shall contain particulars sufficient to identify the insured and also reasonable [sic.] obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

Generally, when the parties declare that a provision to a contract shall be "amended to read as follows," the new provision is substituted for the old one, and all portions omitted from the

-17-

new provision are deleted. See <u>Goodall v. Illinois</u>, 123 Ill. 389, 394, 15 N.E. 171 (1888). This rule, however, is not absolute and will not be applied when it is contrary to the intention of the parties. See <u>Gerdts v. Gerdts</u>, 196 Minn. 599, 601-02, 265 N.W. 811 (1936); <u>State ex rel. Board of Regents of Normal Schools v. Donald</u>, 163 Wis. 145, 148, 157 N.W. 782 (1916).

Based on the facts of this case, it is clear that the purpose of the endorsement to the 1967 Policy was to amend only Mosaic's duty to provide notice of an occurrence by allowing this duty to be triggered when Mosaic's insurance division became aware of an accident; nothing in the endorsement amended that portion of condition number 9 requiring notice of a claim or suit. Under the provisions of the 1967 Policy, Wausau is required to "defend any suit against the insured alleging *** injury, sickness, disease or destruction [within the scope of the policy] and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Without timely notice of a pending claim or lawsuit, Wausau could not fulfill its obligations under the policy to defend its insured or exercise its rights to investigate, negotiate, or settle a claim or suit. The very purpose of a notice of claim or suit provision is to afford the insurer the opportunity to conduct a timely and thorough investigation of the insured's claim, as well

as, the opportunity to locate and participate in the defense of the insured. Northbrook Property & Casualty Co. v. Applied Systems, Inc., 313 Ill. App. 3d 457, 464-65, 729 N.E.2d 915 (2000). Furthermore, both Cox and Moore testified that they had never observed a comprehensive general liability insurance policy that did not contain a provision requiring notice of a claim or suit. As a consequence, we do not believe that the parties intended the amendatory endorsement to wholly supplant condition number 9 in the 1967 Policy and eliminate the notice of claim or suit requirement.

Whenever possible, the main body of the policy must be construed in conjunction with the endorsements in order to determine the meaning and effect of the insurance contract. Protective Insurance Co. v. Coleman, 144 Ill. App. 3d 682, 695, 494 N.E.2d 1241 (1986). Only where an endorsement irreconcilably conflicts with a provision in the body of the policy, will the terms of the endorsement control. Vole v. Atlanta International Insurance Co., 172 Ill. App. 3d 480, 483, 526 N.E.2d 653 (1988). Because there is no provision in the amendatory endorsement concerning notice of claim or suit, there is no conflict, and the provision in the body of the 1967 Policy requiring such notice was not eliminated. Consequently, we affirm the circuit court's finding that Mosaic was required to provide Wausau with notice of a claim or suit under both policies at issue.

Next, Mosaic argues that the circuit court erred in accepting

1-06-3363

Wausau's late notice-defense.  Mosaic contends that its delay in notifying Wausau of the underlying federal actions was reasonable under the circumstances of this case.  We disagree.

According to the policies at issue in this case, when a claim or suit is brought against Mosaic, it must "immediately forward to the company every demand, notice, summons or other process received by him or his representative."  Under Illinois law, a provision calling for an insured to provide notice "immediately" requires notification within a reasonable time.  Zurich Insurance Co. v. Walsh Construction Co. of Illinois, 352 Ill. App. 3d 504, 512, 816 N.E.2d 801 (2004).  Whether reasonable notice was given by the insured depends on the facts and circumstances of the particular case.  Northbrook Property & Casualty Insurance Co., 313 Ill. App. 3d at 465.  In determining whether reasonable notice was provided, courts consider several factors, including the language of the policy, the sophistication of the insured, the insured's awareness that a suit was pending, and the insured's diligence in ascertaining whether policy coverage was available.  Northern Insurance Co. of New York v. City of Chicago, 325 Ill. App. 3d 1086, 1092, 759 N.E.2d 144 (2001).  Prejudice to the insurer is an additional factor to be considered when determining whether an insured has fulfilled a policy condition requiring reasonable notice.  Country Mutual Insurance Co. v. Livorsi Marine, 222 Ill. 2d 303, 317, 856 N.E.2d 338 (2006).  However, an insured's failure

to provide reasonable notice relieves the insurer of its obligations to provide coverage regardless of whether the insurer was prejudiced. Country Mutual Insurance Co., 222 Ill. 2d at 317.

Mosaic had a duty to notify Wausau when the initial federal lawsuit was filed on August 31, 2000, and again when the subsequent 907 individual lawsuits were filed on April 5, 2001. Although somewhat unclear, it appears from the record that Wausau first became aware of the initial lawsuit and the subsequent 907 individual lawsuits when notified by Mosaic on October 12, 2001. This would constitute a delay of 13 months for the initial suit and 6 months for the subsequent 907 lawsuits.

We agree with the circuit court that Mosaic's 13- and 6-month delay in notifying Wausau was unreasonable. Similar periods have been held to be unreasonable as a matter of law. See Equity General Insurance Co. v. Patis, 119 Ill. App. 3d 232, 237-38, 456 N.E.2d 348 (1983) (five months); Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co., 70 Ill. App. 3d 296, 301, 388 N.E.2d 253 (1979) (six months). The only reason offered by Mosaic for its delay in providing notice was that Cox, its director of risk management, inadvertently sent notification to the wrong insurer. Contrary to Mosaic's assertion, an insured's own negligence will not excuse a lengthy delay in providing notice. American Country Insurance Co. v. Bruhn, 289 Ill. App. 3d 241, 248, 682 N.E.2d 366 (1997). Consequently, mistakenly notifying the wrong insurance company is

1-06-3363

not a sufficient excuse for failing to provide the correct insurer with timely notice. See Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211, 214, 12 A.2d 569, 570 (Pa. 1940); Reina v. United States Casualty Co., 228 A.D. 108, 110, 239 N.Y.S. 196, 198 (N.Y. 1930).[1] Based on the record before us, we conclude the circuit court's finding that Mosaic's delay in notifying Wausau was unreasonable and inexcusable is not against the manifest weight of the evidence.

Alternatively, Mosaic argues that, even if its notice was untimely, the circuit court erred in finding that Wausau was not estopped from raising a late-notice defense. Again, we disagree.

Under the estoppel doctrine, an insurer which takes the position that a complaint alleging actions that potentially fall within the coverage offered is not covered under a policy that

---

[1]Mosaic cites to Universal Underwriters Insurance Co. v. Patriot Ambulette, Inc., 149 A.D.2d 500, 539 N.Y.S.2d 981 (N.Y. 1989) (Patriot Ambulette) for the proposition that sending notice to the wrong insurer is a legitimate excuse for an insured's delay in providing notice. In Patriot Ambulette, the Appellate Division of the Supreme Court of New York found that a five-month delay in providing notice was not unreasonably late where the insured's broker originally sent notice to the wrong insurance company and the uncontradicted evidence showed that the correct insurer had actual notice of the underlying claim and had dispatched an investigator three months after the accident. Patriot Ambulette, 149 A.D.2d at 500-01, 539 N.Y.S.2d at 981-982. Subsequent New York decisions, however, have limited Patriot Ambulette to the specific facts of the case and have concluded that a lengthy delay was not excused where the incorrect insurance company was mistakenly notified. See Gershow Recycling Corp. v. Transcontinental Insurance Co., 22 A.D.3d 460, 462, 801 N.Y.S.2d 832, 833-34 (N.Y. 2005); M.Z. Discount Clothing Corp. v. Meyninger, 23 F. Supp. 2d 270, 272 (E.D.N.Y. 1998) (applying New York law).

includes a duty to defend may not simply refuse to defend the insured. Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 150, 708 N.E.2d 1122 (1999) (Ehlco). Rather, the insurer must either (1) defend the underlying suit under a reservation of rights or (2) seek a declaratory judgment that no coverage exists. Ehlco, 186 Ill. 2d at 150. An insurer that fails to take either of these steps and is subsequently found to have wrongfully denied coverage will be estopped from raising defenses to coverage, including a late-notice defense. Ehlco 186 Ill. 2d at 150-51.

Mosaic contends that Wausau did not defend it under a reservation of rights or timely file a declaratory judgment action seeking a ruling of no coverage. With regard to its argument regarding Wausau's defense under a reservation of rights, Mosaic asserts that Wausau did not actually provide a defense in the underlying federal actions. It maintains that Wausau's offer to participate in the defense at a rate of 4% and subsequent payment of only $223,101.79 did not satisfy its duty to defend. See Ehlco 186 Ill. 2d at 157 (finding that an insurer did not provide a defense by merely offering to pay 9% of the defense costs incurred). Mosaic's argument, however, is not well taken.

Generally, where an insurer agrees to defend under a reservation of rights, it will not be barred from pursuing policy defenses in a subsequently filed declaratory judgment action. See

Hartford Fire Insurance Co. v. Whitehall Convalescent & Nursing Home, Inc., 321 Ill. App. 3d 879, 888, 748 N.E.2d 674 (2001). However, if the insurer fails to act reasonably in providing a defense, it may still be estopped from raising defenses to coverage. See Central Mutual Insurance Co. v. Kammerling, 212 Ill. App. 3d 744, 749-50, 571 N.E.2d 806 (1991). We believe that an insurer may discharge its contractual obligations to defend by reimbursing the insured for the reasonable cost of hiring independent counsel. See Stevenson v. State Farm Fire & Casualty Co., 257 Ill. App. 3d 179, 186, 628 N.E.2d 810 (1993) (where a conflict of interest arises between an insurer and its insured, the insurer fulfills its obligation to defend by reimbursing the insured for the cost of independent counsel).

On January 7, 2002, three months after first receiving notice of the underlying federal actions on October 12, 2001, Wausau agreed to defend Mosaic under a reservation of rights. In a letter dated January 11, 2002, Mosaic requested that Wausau begin paying its "appropriate share" of the defense costs incurred. At a subsequent meeting held in May of 2002, Wausau offered to pay 4% of the defense costs.

In July of 2002, after an agreement as to Wausau's "appropriate share" of the defense costs could not be reached, Wausau agreed to pay 100% of Mosaic's "reasonable" defense costs, again under a reservation of rights. Wausau was first provided with the defense

billing invoices on July 22, 2002. According to his testimony, Moore conducted a line-by-line review of the billing invoices and, by August 30, 2002, had reviewed two months of invoices. On that date, Wausau paid Mosaic $223,101.79, as reimbursement for the two months of defense costs. Based on these facts, the circuit court concluded that Wausau honored its duty to defend. In light of the record before us, we cannot find that the court's decision in this regard is against the manifest weight of the evidence.

Shortly after paying the $223,101.79, for two months of defense costs, Moore determined that, contrary to Mosaic's representations, Wausau had not received notice of the underlying actions prior to October 12, 2001. On September 9, 2002, Wausau denied coverage based on Mosaic's failure to provide timely notice. Four days later, on September 13, 2002, Wausau filed a declaratory judgment action, thereby suspending its obligations to defend Mosaic. See Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc., 364 Ill. App. 3d 975, 983-84, 848 N.E.2d 597 (2006).

Based on the record, we find that a trier of fact could rationally conclude that Wausau acted reasonably in defending Mosaic under a reservation of rights. At Mosaic's request that Wausau pay its appropriate share of the defense costs, Wausau originally offered to pay 4%. Shortly thereafter, when an agreement could not be reached as to Wausau's "appropriate share" of the defense costs, Wausau agreed to pay 100% of Mosaic's reasonable defense costs and,

within five weeks of receiving the billing invoices, reviewed two months of invoices and paid Mosaic $223,101.79, as reimbursement for two months' worth of costs. Within the next 14 days, Wausau learned that it had not received notice of the underlying actions prior to October 12, 2001, denied coverage, and brought a declaratory judgment action. Having found that a rational trier of fact could have concluded that Wausau reasonably provided Mosaic with a defense subject to a reservation of rights, it follows that the circuit court's decision finding that Wausau was not estopped from asserting a late-notice defense is not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the circuit court's October 13, 2006, order, finding that Wausau owed no coverage to Mosaic under both the 1967 Policy and the 1968 Policy. In light of our conclusion, we need not address Wausau's alternative arguments for affirmance.

Affirmed.

SOUTH and KARNEZIS, JJ., concur.