# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Schafer v. UnionBank/Central, 2012 IL App (3d) 110008**

---

| | |
|---|---|
| Appellate Court Caption | JAMES B. SCHAFER and MARY E. SCHAFER, Plaintiffs-Appellants, v. UNIONBANK/CENTRAL, a/k/a UnionBank Princeton, a Corporation, Defendant-Appellee (Hatzer and Nordstrom, a Corporation, Defendant). |
| District & No. | Third District<br>Docket No. 3-11-0008 |
| Filed | July 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' pleadings were sufficient to state a cause of action for conversion against defendant bank and the Credit Agreements Act did not preclude plaintiffs from challenging the validity of their commercial security agreement with the bank when the bank asserted the agreement as an affirmative defense to plaintiffs' action, especially when a genuine issue of material fact existed as to whether the agreement allowed the bank to take possession of plaintiffs' farm equipment; therefore, the entry of summary judgment for the bank was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 06-MR-10; the Hon. Cornelius J. Hollerich, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Roger C. Bolin (argued), of Boyle & Bolin, of Hennepin, for appellants. |
| | |
| | Timothy J. Howard (argued) and Jeffrey G. Sorenson, both of Howard & Howard Attorneys PLLC, of Peoria, for appellee. |
| | |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. |
| | Justice Lytton specially concurred, with opinion. |
| | Presiding Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1    Plaintiffs, James and Mary Schafer (the Schafers), appeal from the trial court's grant of summary judgment on their complaint alleging Centrue Bank (formerly UnionBank) (the Bank) converted their personal property. The Bank raised as an affirmative defense to the complaint the existence of a commercial security agreement (CSA) which purported to give the Bank the authority to take immediate possession of the property at issue in the complaint. Following discovery and lengthy motion practice, the Bank sought summary judgment on its affirmative defense. The Schafers responded that the CSA as drafted contained a mutual mistake of fact as to the nature and extent of the personal property secured and, thus, a genuine issue of material fact existed as to the validity of the Bank's affirmative defense. In support of their response to the summary judgment motion, the Schafers submitted certain affidavits and deposition testimony of the loan officer who executed the CSA for the Bank. The Bank moved to strike the affidavit and testimony. The trial court granted the Bank's motion to strike and its motion for summary judgment. The Schafers then appealed. For the following reasons, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 2                                    FACTS
¶ 3    On April 29, 2003, the Schafers borrowed $30,000 from the Bank. The only employee of the Bank involved in the transaction was Jeff Hunt. In conjunction with their execution of a promissory note for the $30,000, the Schafers signed the CSA by which they granted the Bank a security interest in certain assets to secure the payment and performance on certain "Secured Debts." The CSA contained two boxes on the front page that could be checked to indicate whether "Secured Debts" referred to all the debts the Schafers owed to the Bank or only specific debts, such as the debt instrument being executed simultaneously with the CSA. The box for "All Debts" was checked. If the box for "Specific Debts" had been checked,

there was a corresponding blank space in which to write a description of the specific debts to be secured by the CSA. Pursuant to the CSA, the Schafers granted the Bank a security interest in property including, but not limited to, inventory, equipment, and farm product and supplies. The loan originated on April 29, 2003, and was paid in full the following month.

¶ 4    In 2005, the Bank instituted foreclosure proceedings on 18 separate real estate mortgages given by the Schafers. In December 2005, the Bank's collection officer, Stephen Sendelbach, discovered the April 2003 CSA in the credit file. When the foreclosures failed to recoup all funds due under the mortgages, the Bank, relying upon the CSA, arranged for the Schafers' farm equipment to be taken from their farm. The property was taken on December 27, 2005.

¶ 5    On March 8, 2006, the Schafers filed a complaint for declaratory judgment against the Bank and Hatzer & Nordstrom, the commercial auctioneer where the property was being stored pending a public auction. The complaint alleged that the Bank took possession of the property without lawful authority. The complaint sought an order requiring the return of the property. In addition to the complaint for declaratory judgement, the Schafers also filed a motion seeking a preliminary injunction to prevent the impending sale of their property by the auctioneer. The Schafers attached to their complaint for declaratory judgment what they alleged was a "[t]rue, correct, and genuine copy" of the CSA. They alleged, on information and belief, that the CSA was the instrument upon which the Bank relied to justify its seizure of their property. Also attached to the complaint was an affidavit from Hunt in which he stated that it was "the intention of [the Bank] and the Schafers at the time the loan originated to release any lien or security interest created at the time of loan origination when that particular loan was paid." He further stated that "[n]o security interest in any collateral was to survive the payment of the specific loan made April 29, 2003."

¶ 6    The Bank filed a motion to dismiss the motion for preliminary injunction. On March 14, 2006, following a brief hearing at which James Schafer and Sendelbach testified, the court denied the preliminary injunction. Shortly thereafter, the property taken by the Bank was sold at auction.

¶ 7    Approximately three years later, on March 25, 2009, the Schafers filed an amended complaint for declaratory relief which was substantially the same as the original complaint. The amended complaint merely dropped the auctioneers as defendants. The Bank filed a motion to dismiss the amended complaint, maintaining that the CSA was a clear and unambiguous bar to the cause of action alleged in the amended complaint. The Bank further maintained that the complaint failed to allege how the CSA was not a clear and unambiguous bar to recovery. In their response to the motion to dismiss, the Schafers maintained that the CSA as drafted was the result of a mutual mistake of fact. Attached to the response was a new affidavit executed by Jeff Hunt, in which he contradicted his previous statement that the CSA was "a true" copy. He now asserted that the CSA was "inaccurate" in that the box on the CSA for "All Debts" was marked in error.

¶ 8    The trial court granted the Bank's motion to dismiss the amended complaint. The court observed that mutual mistake was raised in the response to the motion to dismiss but ruled, nonetheless, that the complaint itself failed to allege sufficient facts that would state the elements necessary for relief. The court pointed out that, since the property had already been

sold at auction, declaratory relief could no longer be granted, and any future cause of action would have to be for monetary damages. Thereafter, the Schafers obtained leave to file a second amended complaint.

¶ 9        A second amended complaint was filed on September 29, 2009, in which the Schafers alleged that the Bank had taken their personal property without their consent and sought judgment for the fair market value of the items. The complaint for conversion contained no mention of the CSA, and Hunt's affidavit was not attached.

¶ 10       The Bank filed an answer and affirmative defense to the second amended complaint. The Bank denied that the removal of the personal property had been unlawful and accomplished without consent. For its sole affirmative defense, the Bank attached a copy of the CSA, maintaining that the CSA secured "all present and future debts owed by the Schafers to [the Bank]." The Bank pointed out that the CSA authorized it to "enter upon [the Schafers'] premises and to take possession of all or any part of [their] [p]roperty to protect [the Bank's] interest, all without payment or compensation to [the Schafers]" and to "use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the [s]ecured [d]ebts." The Schafers filed a general denial to material allegations contained in the affirmative defense.

¶ 11       The Bank filed a motion for summary judgment on October 22, 2010. The gist of the motion was that it lawfully seized and sold the property at issue pursuant to the terms of the CSA, which the Bank maintained secured all present and future debts of the Schafers. The Bank pointed out that the CSA contained a provision stating "[n]o modification of the Agreement is effective unless made in writing and signed by [both parties]." Attached to the motion for summary judgment was an affidavit from Roger Dotson, the Bank's executive vice president and head of operations, stating that "[t]here is no written modification of the CSA signed by [the parties]." It was noted in the motion that Dotson's statement was confirmed by Hunt's affidavit.

¶ 12       Dotson also stated that "the Bank filed a UCC-1 Financing Statement with the Illinois Secretary of State as Document No. 6943608, naming [the Schafers] as debtors and for the benefit of [the Bank]" and that the Bank never terminated the financing statement. Hunt also verified both of these facts in his deposition, relevant portions of which were attached to the Bank's motion for summary judgment.

¶ 13       In further support of its motion, the Bank established that, on various dates between 1999 and 2002, it made no less than 18 real estate mortgage loans to the Schafers, and they had defaulted on all of these loans. On October 20, 2005, after these loans went into default, the Bank sent a notice of acceleration and demand for full payment. The notice identified 18 loans and itemized the various defaults under each loan. Upon being asked in his deposition if he received the original notice, James Schafer replied, "Yeah, I think so." On various dates between November 22, 2005, and December 21, 2005, the Bank filed 18 complaints for foreclosure against the Schafers. In December 2005, the Schafers continued to be in default on all of their then outstanding loans from the Bank.

¶ 14       The Schafers filed their response to the Bank's motion for summary judgment on November 24, 2010. They incorporated by reference Hunt's affidavit dated August 7, 2009,

-4-

which had previously been with their response to the Bank's motion to dismiss the amended complaint. They also attached the transcript of Hunt's deposition which was taken on July 7, 2010. They argued that Hunt's affidavit and deposition testimony established that the CSA mistakenly indicated that it was the intention of the parties that it secured all their debts to the Bank rather than securing only the loan originating on April 12, 2003, the same date the CSA was executed. The Schafers further maintained, therefore, that the CSA should have been released when that loan was paid in full on May 12, 2003.

¶ 15       The Bank moved to strike Hunt's affidavit and bar his testimony concerning the intent of the parties with respect to the CSA. The Bank argued that Hunt's testimony, in both his affidavit and deposition, sought to modify the CSA in violation of the parol evidence rule and the Illinois Credit Agreements Act (Credit Agreements Act) (815 ILCS 160/1 *et seq.* (West 2008)).

¶ 16       On December 6, 2001, the trial court entered an order granting both the motion to strike the affidavit and bar certain testimony by Hunt and the motion for summary judgment. The Schafers filed a timely notice of appeal.

¶ 17                                          ANALYSIS

¶ 18       In this appeal from the trial court's grant of summary judgment, we are presented with two issues. First, did the Schafers sufficiently raise a claim of mutual mistake of fact in their pleadings? Second, does the Credit Agreements Act bar any attempt by the Schafers to challenge the Bank's use of the CSA as an affirmative defense to their conversion action? We review a grant of summary judgment *de novo*. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). "Section 2-1005 of the Code of Civil Procedure provides for summary judgment when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact ***." *Id.*; 735 ILCS 5/2-1005 (West 2008). We review the record in the light most favorable to the nonmoving party. *Forsythe*, 224 Ill. 2d at 280.

¶ 19                              I. Sufficiency of the Pleadings

¶ 20       We first address the Bank's argument that, because the Schafers did not seek to reform the CSA in their pleadings, they are precluded from challenging the Bank's affirmative defense. The gist of the Bank's argument is that, because the Schafers did not *plead* reformation of the CSA, they may not challenge its validity as an affirmative defense against their complaint for conversion. We disagree. There is a very good reason why the Schafers did not plead reformation of the CSA by the court. They were not seeking reformation of the CSA. They filed an action for conversion against the Bank, seeking compensation for personal property alleged to have been wrongfully taken from them. To state an action for conversion, a plaintiff must allege: (1) an unauthorized and wrongful assumption of control of his property by another; (2) dominion or ownership by a person over the personalty of another; (3) his right to the property; (4) his absolute and unconditional right to immediate possession of the property; and (5) a demand for the property. *Douglass v. Wones*, 120 Ill. App. 3d 36, 41 (1983). Reviewing the Schafers' second amended complaint, we find all of

the elements of a cause of action for conversion are present in the complaint. We are aware of no pleading requirement that would require a plaintiff to include in his complaint any pleading in anticipation of a possible affirmative defense.

¶ 21 The Bank filed an answer to the Schafers' complaint, denying that their property had been unlawfully removed without their consent. Additionally, as an affirmative defense, the Bank attached a copy of the CSA and alleged that the document "authorized" the Bank to enter upon the Schafers' property and take possession of their personal property. The Schafers filed an answer to the affirmative defense, denying all material factual allegations contained in the affirmative defense. Viewing these pleadings in the light most favorable to the nonmovant, we see a complaint sufficiently raising a claim of conversion of personal property, an answer denying the complaint, along with an affirmative defense interposing the CSA as a defense to the complaint, and a response to the affirmative defense denying all the factual allegations contained therein. We find no need for further pleadings to present the issues to the circuit court.

¶ 22 The Bank maintains, nonetheless, that the Schafers are seeking to *reform* the CSA and therefore must plead a cause of action in reformation. We disagree. The Schafers are not seeking relief in the form or reformation of the CSA; rather, they are challenging the preclusive effect of the document as a defense to their complaint. The Bank's argument would appear to be that, because the Schafers did not style their response to the affirmative defense as a petition for reformation, the Bank is entitled to summary judgment on the conversion complaint. The law, however, does not hold so strictly to a doctrine of form over substance. 735 ILCS 5/2-603(c) (West 2008) ("Pleadings shall be liberally construed with a view to doing substantial justice between the parties."). Here, the Schafers have sufficiently raised an allegation in their pleadings that the CSA does not accurately reflect the agreement of the parties. Granted, the allegation is raised in their response to the Bank's affirmative defense and not in their complaint. However, as we noted previously, there was no need to anticipate the Bank's affirmative defense, and the Schafers' response to the affirmative defense was a sufficient point in the pleadings to challenge the affect of the CSA.

¶ 23 Moreover, even if we were to acknowledge that the Schafers were required to specifically plead a count in *reformation*, there is sufficient authority for the proposition that reformation is adequately pled as long as there are sufficient facts pled from which mutual mistake can be established:

"In stating the basis for reformation, a party seeking reformation based on mutual mistake need not allege in express terms that the written instrument was erroneously executed through mistake as long as his pleading sets out specific facts from which 'such a conclusion is inevitable or fairly deductible.' (*Darst v. Lang* (1937), 367 Ill. 119, 125; see also *St. Joseph Data Service, Inc.* [*v. Thomas Jefferson Life Insurance Co. of America*], 73 Ill. App. 3d [935], 943[(1979)]; *All Brake & Drive Unit Service, Inc. v. Peterson* (1979), 69 Ill. App. 3d 594, 597.) Such facts must be sufficient to answer the basic question of who, when, and where so as to apprise the defendant of the facts giving rise to the claim." *Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton*, 170 Ill. App. 3d 244, 252 (1988).

¶ 24    Similarly, in *All Brake & Drive Unit Service*, the court held that, although a party had not alleged mistake in his pleadings, he had sufficiently raised the issue of mutual mistake of fact in a certain written instrument where he alleged facts from which it appeared that the contract purchase price in the agreement was not in conformity with the original agreement of the parties to the sale. *All Brake & Drive Unit Service*, 69 Ill. App. 3d at 597.

¶ 25    We also find that the case cited by the Bank, *IMC Global v. Continental Insurance Co.*, 378 Ill. App. 3d 797 (2007), is clearly distinguishable. In *IMC Global*, the court observed that the plaintiff in that matter *could* have sought leave of court at the close of proofs to conform the pleadings to the proofs and seek reformation of the document at issue. *Id.* at 805. In the instant matter, we find no need to seek to conform the pleadings to the proofs. The pleadings as they existed sufficiently raised the issue of mutual mistake of fact in its appropriate pleading context, *i.e.*, not as a request for relief from the court, but as an allegation that the Bank's affirmative defense was factually inaccurate.

¶ 26                              II. Summary Judgment

¶ 27    Having determined that the Schafers' pleadings were sufficient, we must determine whether the circuit court properly granted summary judgment to the Bank based upon the CSA. We must determine whether the Credit Agreements Act precludes the Schafers from challenging the validity of the CSA when it is raised by a creditor as an affirmative defense to a conversion action. This is a matter of first impression in Illinois, although our courts have consistently held that the Credit Agreement Act precludes any action by a debtor against a creditor "so long as the action is in any way related to a credit agreement." (Internal quotation marks omitted.) *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1055 (1999). Here, however, the debtors have not raised an action against the creditor under the credit agreement; rather, they only address the agreement when it was raised by the creditor as its defense to a conversion action.

¶ 28    Interpreting or construing a statute is a matter of law to be reviewed *de novo*. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 514 (1997). The plain language of the Credit Agreements Act reveals no prohibition against the Schafers challenging the validity of the CSA when it is raised by the creditor as an affirmative defense to a complaint for conversion:

> "A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forebear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." 815 ILCS 160/2 (West 2008).

¶ 29    Our courts have held that the debtor may not seek to modify or amend a credit agreement by means of a subsequent oral modification. *Bank One, Springfield*, 309 Ill. App. 3d at 1058. However, in the instant matter, the Schafers do not allege an oral modification to the CSA. Rather, they maintain that the CSA, as executed, was not accurate. We are aware of no Illinois authority standing for the proposition that a debtor cannot challenge the validity of a CSA raised as an affirmative defense to a conversion action.

¶ 30    No court, however, has addressed whether a debtor could challenge the validity of a

credit agreement when it is raised by the creditor in an action against the debtor. Our review of the plain language of the statute reveals no clear and unambiguous prohibition against a plaintiff in a conversion action from challenging the validity of any document purporting to authorize the taking of that plaintiff's property. We see no reason to read into the Credit Agreements Act a prohibition that clearly does not exist.

¶ 31 We find that the Schafers were not precluded from raising the validity of the CSA in the instant matter. Given that there is a genuine issue of material fact as to whether the CSA, in fact, authorized the Bank's actions in taking possession of the Schafers' personal property, we find that summary judgment was not appropriate.

¶ 32                                    CONCLUSION

¶ 33 The judgment of the circuit court of Bureau County, granting summary judgment to the defendant, is reversed, and the cause is remanded for further proceedings.

¶ 34 Reversed and remanded.

¶ 35 JUSTICE LYTTON, specially concurring.

¶ 36 I agree with the majority opinion in all its particulars. But since the majority does not reach the issue, I write separately to state my belief that the Credit Agreements Act (Act) (815 ILCS 160/1 *et seq.* (West 2008)) does not apply to the contract in this case because it contains a mutual mistake of fact.

¶ 37                                         I

¶ 38 The formation of a contract requires three basic elements: (1) offer and acceptance (*Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977)), (2) consideration (*Meadows v. Radio Industries, Inc.*, 222 F.2d 347 (7th Cir. 1955)), and (3) mutual assent, also referred to as a meeting of the minds or mutuality (*Martin v. State Farm Mutual Automobile Insurance Co.*, 348 Ill. App. 3d 846 (2004)). Without any one of these requirements, there can be no contract. See *Liccardi v. Stolt Terminals (Chicago), Inc.*, 283 Ill. App. 3d 141 (1996).

¶ 39 In analyzing whether there is mutual assent, the parties must show an intent to be bound by the contract terms. *Walter A. Wood Mowing & R.M. Co. v. Trexler*, 97 Ill. App. 170 (1901). There can be no valid assent if there has been mistake, fraud or duress. If mistake is proven in the formation of any contract, the contract is unenforceable. *In re M.M.D.*, 213 Ill. 2d 105 (2004). In cases of mutual mistake, "the contract is voidable by the adversely affected party." See Restatement (Second) of Contracts § 152 (1981). Thus, a contract may be rescinded or reformed by an injured party on the basis of mistake. See *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019 (2007) (rescission); *Gromer v. Molby*, 385 Ill. 283 (1944) (reformation).

¶ 40 In this case, James Schafer and an agent of the Bank both testified that the wrong box was checked concerning the security for the loan. If so, a mutual mistake was made, and

plaintiffs may void the term and reform it.

¶ 41                                             II

¶ 42        The intent of the drafters of the Act was to disallow the use of exceptions to the statute of frauds as defenses to enforcement of a credit contract. *Teachers Insurance & Annuity Ass'n of America v. La Salle National Bank*, 295 Ill. App. 3d 61 (1998). Illinois courts have properly applied the Act to attempts to modify or change written contracts by showing additional or separate oral agreements. See *McAloon v. Northwest Bancorp, Inc.*, 274 Ill. App. 3d 758 (1995); *First National Bank in Staunton v. McBride Chevrolet, Inc.*, 267 Ill. App. 3d 367 (1994).

¶ 43        However, while the Act applies to valid credit agreements, it cannot affect a voided, unenforceable contract. Simply put, when a contract is unenforceable, it becomes a nullity, and the Act cannot resurrect it.

¶ 44        Here, Unionbank/Central argues that this court must declare that the contract is enforceable as it is. If there is mutual mistake, however, there is no binding contract and no enforcement thereof, only rescission or reformation. The Act, by it terms, eliminates the application of any exceptions to statute of frauds to credit contracts; it does not and cannot apply to invalid contracts or contract terms.


¶ 45        PRESIDING JUSTICE SCHMIDT, dissenting.

¶ 46        The trial court correctly granted summary judgment in this case since plaintiffs never sought to reform the contract. The issues in litigation are determined by the pleadings, and an issue cannot be sustained by evidence absent a corresponding pleading. *Broberg v. Mann*, 66 Ill. App. 2d 134, 137 (1965). The complaint fixes the issue in controversy and the theories upon which recovery is sought. *IMC Global v. Continental Insurance Co.*, 378 Ill. App. 3d 797, 804 (2007). A circuit court lacks jurisdiction to adjudicate an issue not presented through proper pleadings. *Id.* at 804-05. Proof without pleadings is as defective as a pleading without proofs, and "a party cannot plead one cause of action in its complaint and receive judgment on the basis of a different cause of action." *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 652 (1995). It is improper for a court to reform a contract when the party did not seek reformation in its complaint. *IMC Global*, 378 Ill. App. 3d at 804.

¶ 47        The majority decides that plaintiffs sufficiently raised the issue of reformation. *Supra* ¶ 25. It cites to a number of cases for the proposition that reformation is sufficiently pleaded when "there are sufficient facts pled from which mutual mistake can be established." *Supra* ¶ 23. I agree with its interpretation of those cases. I do not agree with the majority's determination that plaintiffs pled sufficient *facts*; indeed plaintiffs have pled no facts with regard to mutual mistake. Their burden is to present sufficient facts from which "a conclusion [of mutual mistake] is inevitable or fairly deducible." *Darst v. Lang*, 367 Ill. 119, 125 (1937). Plaintiffs must plead facts "sufficient to answer the basic questions of who, when, and where." *Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton*, 170 Ill. App. 3d 244, 252 (1988). Plaintiffs merely made a general denial of defendant's

affirmative defense. Plaintiffs' general denial provides no facts.

¶ 48    Someday, this court will be required to decide whether the Credit Agreements Act (the Act) (815 ILCS 160/1 *et seq.* (West 2008)) precludes a party from asserting a mutual mistake of fact with regard to a credit agreement; this is not that day.

¶ 49    "A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing" and meets certain other requirements. 815 ILCS 160/2 (West 2008). Plaintiffs filed an action for conversion. Defendant pleaded the CSA as an affirmative defense. In response, plaintiffs argue that the written credit agreement does not reflect the parties' agreement. Therein lies the problem. Plaintiffs want to maintain an action related to a different credit agreement that is not in writing. This is prohibited by the Act. *Id.*

¶ 50    The majority decides that the Act does not apply here, as the CSA was raised as an affirmative defense. *Supra* ¶ 28. What difference does it make when it was raised? Plaintiffs' entire case rests on proving that the true credit agreement entered into by the parties has not been reduced to writing. Of course this conversion action is related to a credit agreement. To decide otherwise ignores the facts of this case and the plain language of the Act. See *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 918-19 (2005).

¶ 51    The majority's approach results in a race to file. It allows a party to nullify the Act if the party can file an initial pleading that does not mention a credit agreement. Surely the plain language of the Act refutes such a finding. The Act deals with "an action on or in any way related to a credit agreement." 815 ILCS 160/2 (West 2008).

¶ 52    The concurrence asserts that the Act does not apply since, due to a mutual mistake, the CSA is voidable, an argument not made by plaintiffs. Plaintiffs argued that the CSA, as written, does not reflect the true agreement reached by the parties. The general rule in such circumstances is that the contract is not void, but may be reformed to reflect the terms upon which the parties originally agreed. *Mid-Century Insurance Co. v. Founders Insurance Co.*, 404 Ill. App. 3d 961, 967-68 (2010); *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869 (2008). Since the CSA is not void, the question that remains to be answered is whether mutual mistake is a valid defense to a credit agreement under the Act.

¶ 53    This is not the time to answer that question. As plaintiffs never pled mutual mistake or sought to reform the CSA, this court should not reach the issue of whether or not the Illinois Credit Agreements Act precludes the reformation of a credit agreement due to mutual mistake of fact. The trial court correctly granted summary judgment in favor of defendant.

¶ 54    Therefore, I respectfully dissent.